IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Crim. No. 10-047-SLR |
| | ) | |
| BRUCE E. COSTA, JR., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM ORDER**

At Wilmington this  30th day of September, 2010, having considered

defendant's motion to set bail and the papers submitted in connection therewith,

including the information provided by the United States Probation and Pre-Trial Service

Office ("Probation Office"):

IT IS ORDERED that defendant's motion (D.I. 14) is denied for the reasons that

follow:

1. **Background.** On April 15, 2010, a federal grand jury returned a one count

indictment and notice of forfeiture charging defendant[1] with unlawfully distributing

Oxycodone,[2] a Schedule II controlled substance, in violation of 21 U.S.C. §841(a)(1)

---

[1]According to the government, defendant was a registered pharmacist in the State of Delaware from 1999 until October 2009. (D.I. 9 at 2)  In February 2008, defendant opened the Renaissance Family Pharmacy ("the Pharmacy") in Claymont, Delaware.  In January 2009, defendant transferred the Pharmacy to Jeremy Karshuba ("Kashuba"), a registered pharmacist.

[2]Oxycodone, available by prescription only, is a highly addictive painkiller that is illegally sold on the "street." (D.I. 26 at 3)

and (b)(1)(C).[3]  (D.I. 3)  After defendant's arrest on May 3, 2010, the government filed a

motion to detain pending trial.  (D.I. 6)  An order of temporary detention was entered

and a detention hearing scheduled for May 6, 2010.  (D.I. 7)  The government filed a

memorandum in support of the motion to detain.  (D.I. 9)

  2. At the hearing, defendant did not contest detention and was ordered detained

(D.I. 11)  Defendant, subsequently, filed a motion for bail with the district court[4] and a

hearing was scheduled for June 2, 2010.  The parties agreed to present their evidence

by proffer, which the court permitted.

  3. At the conclusion of the hearing, the court advised counsel that, in order to

resolve and clarify several disputed factual contentions, the hearing would be continued

to allow the Probation Office to obtain further relevant information.[5]  (D.I. 18)  On June

---

[3]An offense punishable by more than 10 years of imprisonment that triggers a
rebuttable presumption that defendant should be detained pending trial.  18 U.S.C. §
3142(e); United States v. Suppa, 799 F.2d 115, 119 (3d Cir. 1986).

[4]At the time, the matter was assigned to the Honorable Joseph J. Farnan, Jr.

[5]Specifically, the court directed the Probation Office to investigate:
  (1) the circumstances in which the 646.5 Oxycodone pills found
  in defendant's closet were obtained, including the name of any
  physician writing the prescription for the pills and the pharmacy
  records related to the filling of any prescription for defendant;
  (2) the circumstances of any payments and/or loans made by
  Kashuba to defendant with respect to the sale and/or operation
  of the Pharmacy and the source or origin of any funds from or
  by which Kashuba made the purchase;
  (3) Any documentation from the Pharmacy that supports the 2009
  earnings (approximately $650,000) of Nicole Costa (defendant's
  spouse); and
  (4) All documents that support the "Insurance Reimbursement"
  deposit entries shown on pages 14 and 15 of the Pharmacy's general
  ledger (admitted at the hearing and marked as Ex.1) from
  January 4, 2010 through April 7, 2010.

7, 2010, defendant filed a motion to suppress evidence seized during a search of his residence. (D.I. 19)

4. Following reassignment to the undersigned, a teleconference was held on June 23, 2010. (D.I. 25) After conferring with the parties, the court ordered the Probation Office to file its report before July 2, 2010 and allowed the parties to file supplemental briefs by July 16, 2010. (D.I. 27) Probation submitted its findings;[6] the matter is fully briefed and ripe for review.[7] (D.I. 30, 31)

5. On September 7, 2010, defendant's motion to suppress evidence seized during a search of his residence was denied. (D.I. 35) The court incorporates by

────────────────

(D.I. 18)

[6]As a result of its investigation into the court's inquiries, the Probation Office found:
(1) According to clarifications submitted by defendant's attorney, defendant obtained some of the Oxycodone pills found in his closet from Neighbor Care pharmacy; however, there were no records of any prescriptions for defendant filled at the Neighbor Care pharmacy in 2005-2006. Upon further reflection, defendant's counsel advised that a significant portion of the Oxycodone pills were obtained from an elderly customer ("customer") who would fill a prescription and not use all the pills. According to defendant, the customer would bring the pills to defendant for destruction; however, defendant did not destroy the pills. Instead, defendant, at the time suffering from back pain, retained and used the pills. Defendant further indicated that he was issued a prescription for Oxycodone 30 mg from a local physician.
(2) By his counsel, Kashuba did not provide substantive responses to probation's inquiries.
(3) A 2009 W-2 wage summary indicates that Mrs. Costa's wages were $648,500.
(4) By his counsel, Kashuba did not provide substantive responses to probation's inquiries.

[7]Although the parties originally agreed that the motion was appropriate for disposition on the papers, defendant subsequently filed a letter request for oral argument. (D.I. 32) The request is denied, there being no novel issue of law presented.

3

reference the findings and conclusions of that memorandum opinion.

6. On September 22, 2010, a federal grand jury returned a four count superseding indictment and notice of forfeiture, charging defendant with unlawful distribution of Oxycodone, on or about, September 12, 2009 (count one), September 5, 2009 (count two) and August 29, 2009 (count three). Count four charges that, from in or about November 2008 and continuing to September 12, 2009, defendant maintained and used a building for the purpose of unlawfully distributing Oxycodone, in violation of 21 U.S.C. 856(a)(1). (D.I. 38)

7. **Bail Reform Act.** The release or detention of a defendant pending trial is governed by the structured system of the Bail Reform Act, 18 U.S.C. §§ 3141 et seq ("the Act"). *United States v. Lemos*, 876 F. Supp. 58, 59 (D. N.J. 1995). The Act seeks to ensure that the interests of the public and the defendant are carefully contemplated before release or detention is ordered. *Id.* To that end, the court must detain the defendant if it finds that either: (1) there is clear and convincing evidence that no combination of conditions will ensure the safety of the community if he is released; or (2) the preponderance of the evidence demonstrates that no combination of conditions will ensure the appearance of the defendant as required. 18 U.S.C. §§ 3142(e) & (f). Section 3142(c)(1)(B) sets forth a nonexclusive list of conditions that a court may impose upon granting a defendant's motion for pretrial release.

8. Where the record reflects that there is probable cause to believe that defendant has committed an offense for which a maximum term of imprisonment is prescribed by the Controlled Substances Act, 21 U.S.C. § 801 et seq., the Bail Reform

4

Act creates a rebuttable presumption that no condition or combination of conditions will reasonably assure the safety of any other person in the community or defendant's appearance at trial. *United States v. Suppa*, 799 F.2d at 116.  The presumption shifts the burden to defendant to produce evidence demonstrating that he will appear and will not present a threat to the community. *United States v. Carbone*, 793 F.2d 559, 560 (3d Cir. 1986).  To rebut the presumption, the defendant must produce some credible evidence for his contention that he will appear and will not pose a threat to the community. *Id.*

9.  When deciding whether the defendant has rebutted the presumption that no condition or combination of conditions will be sufficient, the court must review the factors identified in § 3142(g), including:  (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release.  18 U.S.C. §§ 3142(g)(1) - (4).  In so considering theses factors, the court is not bound by the rules of evidence and may consider proffered facts. *United States v. El Hage,* 213 F.3d 74, 82 (2d Cir. 2000).

10.  **Section 3142(g) factors.**  Defendant is charged with the unlawful distribution of Oxycodone, a narcotic that poses a serious danger to the community. The weight of the evidence against defendant is strong and reflects his illegal distribution of Oxycodone over an extended period.  For this conduct, defendant is

5

facing a substantial period of incarceration[8] and creates an incentive for defendant to flee before trial.

11.  Further, the charges emanate from an extensive federal and state investigation[9] which included, inter alia, cooperating individuals and surveillance that revealed, on three occasions, defendant's meeting, at or near the Pharmacy, with a cooperating individual and the exchange of Oxycodone pills (without a prescription) for cash.  On the day of his arrest, law enforcement agents searched defendant's residence and seized:  (1) over 600 Oxycodone 30 mg pills in manufacturer's bottles (not prescription vials); (2) approximately $160,000 in cash; (3) a money-counting machine; (4) three handguns;  and (5) a notebook containing a list of assets.  The notebook included a September 14, 2009 entry reflecting that $1,850,000 was held in various bank and investment accounts and another entry identifying over a million dollars stored in safes located at defendant's parent's residence.  The court concludes that these assets,[10] as well as Mrs. Costa's wages, provide the financial means to accomplish flight before trial.

12.  Defendant has prior convictions related to dispensing medication improperly

---

[8]The government calculates that defendant faces a Sentencing Guideline range of 151 to 188 months of incarceration.

[9]Law enforcement agents also executed a search warrant on the Pharmacy for records related to Oxycodone 80 mg pills.  As a result of this audit, law enforcement agents estimate that the Pharmacy is short approximately 44,000 Oxycodone 80 mg pills, representing a street value of over $800,000.

[10]Defendant contends that the majority of the cash found in the safes at his and his parents' residence was paid by Kashuba in partial satisfaction of the purchase price of the Pharmacy.

and fraudulently.  Although a registered pharmacist during the period from which the

charges at bar originate, defendant's pharmacy license was placed on a four and one

half year suspension in October 2009.  This suspension resulted from a consent

agreement entered into by defendant and the Delaware Board of Pharmacy after

defendant had pled no-contest to several state misdemeanor offenses involving

Medicaid fraud in 2008.  The consent agreement reflects that defendant's misdemeanor

convictions involved dispensing medications without proper authorization, defrauding a

government agency, fraudulently altering a prescription and dispensing medication

without a valid prescription.

13.  In light of this record, the court finds that defendant has failed to rebut the

statutory presumption that no combination of conditions could reasonably assure the

safety of the community between now and the time of trial and that defendant would

appear for all court events in this matter.

United States District Judge